UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KELLOGG NORTH AMERICA COMPANY LLC, | ) ) ) | Civil No. |
| | ) | Hon. |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LEGGO MY EGGROLL OHIO, LLC, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Kellogg North America Company LLC, by and through the undersigned counsel, and for its Complaint against Defendant Leggo My Eggroll Ohio, LLC ("Defendant") states as follows:

## THE PARTIES

1.     Plaintiff Kellogg North America Company LLC is a Delaware limited liability company with its principal place of business at One Kellogg Square, Battle Creek, Michigan.

2.     Upon information and belief, Defendant Leggo My Eggroll Ohio, LLC is an Ohio limited liability company. Additionally, upon further information and belief, Mr. Bobby Singkham is Defendant's Statutory Agent and can be located at 719 Tiffin Avenue, Findlay, OH 45840.

## JURISDICTION

3.     This action arises under the Lanham Act, Title 15, Sections 1114 and 1125 of the United States Code.

60415171.4

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121.

5.     This Court has personal jurisdiction over Defendant because Defendant: (1) resides and is located within the State of Ohio and this District; (2) regularly and continuously engages in substantial sales and other business transactions in the State of Ohio and this District; (3) has committed the infringing acts specified herein within the State of Ohio and this District; (4) caused injury to Plaintiff Kellogg North America Company, LLC within the State of Ohio and this District; and (5) has substantial contacts with the State of Ohio and this District as a result of pervasive business activities conducted within the State of Ohio and within this District, including but not limited to the infringing activities complained herein.

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400.

**GENERAL ALLEGATIONS**

**A.  Kellogg's History And Its EGGO Waffles**

7.     Plaintiff Kellogg North America Company LLC owns all right, title, and interest in its EGGO-formative trademarks, as defined further below, including all the goodwill associated therewith.

8.     Plaintiff Kellogg North America Company LLC, by and through and together with its predecessors and affiliated companies (collectively, "Kellogg") is a multinational food manufacturing company dedicated to the manufacturing, marketing, and selling of a diverse array of high-quality food products and related products to consumers.

9.     Kellogg was founded in 1906 in Battle Creek, Michigan as a manufacturer of corn flakes cereal. Since that time, Kellogg has grown to become a multi-billion dollar company with a

variety of food offerings ranging from snack and ready-made foods such as crackers, nutritional bars, chips and meat substitute products, to a variety of breakfast foods.

10.     One of Kellogg's breakfast foods is the famous EGGO waffle. The EGGO waffle was born in 1936 when inventor Frank Dorsa and his brothers created a waffle mix in their mother's kitchen that restaurants could use to quickly and easily make delicious waffles for their customers. That mixture was the first in the EGGO line of products.

11.     Frank and his brothers also saw an opportunity to help families have their own homemade waffles without the hassle of cooking from scratch. He invented a system to make waffles on waffle irons and then flash freeze them, creating the now iconic EGGO waffle.



12.     As part of its overall branding strategy, in 1972, Kellogg introduced the now-famous advertising slogan L'EGGO MY EGGO to advertise, market, and promote its EGGO waffles.  Since the introduction of the slogan in the early 1970s, Kellogg has used L'EGGO MY EGGO continuously and prominently in various advertising and marketing campaigns, including in television ads and print media disseminated nationwide.  The following are representative examples of such advertising and marketing materials over the decades:

60415171.4





4





60415171.4



13.     In addition to appearing in numerous commercials and other print media, the phrase L'EGGO MY EGGO and EGGO waffles have appeared in numerous television programs, further increasing their renown:



[From That 70's Show]



[From Stranger Things 2 Super Bowl Ad]



[From Stranger Things Season 1]

60415171.4

14.     In the decades since its first use of the EGGO and L'EGGO MY EGGO marks, Kellogg has invested substantial sums in promotions and advertisements prominently featuring EGGO products and the slogan L'EGGO MY EGGO.

15.     As a result of the widespread distribution and reach of Kellogg's advertisements for EGGO products featuring the slogan L'EGGO MY EGGO, the phrase L'EGGO MY EGGO has become famous as signifying EGGO waffles from Kellogg, and Kellogg only.

**B. Kellogg's Significant Registered Trademark Portfolio For Its Eggo® Waffles**

16.     In addition to its longstanding common law rights in the EGGO brand and the famous slogan, L'EGGO MY EGGO, Kellogg owns numerous United States Trademark Registrations and Applications for iterations of the marks: L'EGGO MY EGGO and EGGO, as shown in the chart below:

| Mark | Reg. No./ App. No. | Reg. Date/ App. Date | First Use | Class/Goods and Services |
|------|--------------------|----------------------|-----------|--------------------------|
| EGGO | 692,163 | 1/26/1960 | Apr. 27, 1935 | 30 – Frozen waffles |
| L 'EGGO MY EGGO | 2,310,962 | 1/25/2000 | Dec., 1972 | 30 - Waffles |
| EGGO | 3,359,488 | 12/25/2007 | 1953 | 30 - Waffles, pancakes, french toast sticks |
| L'EGGO MY EGGO | 3,419,042 | 4/29/2008 | Dec., 1972 | 30 - Waffles, pancakes, french toast |
| EGGO | 4,392,555 | 8/27/2013 | 2002 | 25 - Shirts |
| EGGO BITES | 4,549,014 | 6/10/2014 | Dec. 22, 2013 | 30 - Frozen breakfast foods, namely, waffles, pancakes, french toast |
| L'EGGO WITH EGGO | 6,919,308 | 12/6/2022 | Jan. 13, 2021 | 30 - Waffles; French toast, pancakes |
| EGGO | 7,511,207 | 9/24/2024 | Jan 2024 for Class 29 and October 22, for Class 33 | 29 - Coffee creamer<br><br>33 - Liquors, spirits and liqueurs; Flavored liquors |

| Mark | Reg. No./ App. No. | Reg. Date/ App. Date | First Use | Class/Goods and Services |
|---|---|---|---|---|
| *Eggo* | 7,611,198 | 2/29/2024 | Jan., 1980 | 30 - Pancakes; Waffles; French toast |
| EGGO | 98/746,929 | 9/12/2024 | | 30 - Coffee; Grain-based snack foods |
| EGGO | 98/012,346 | 5/24/2023 | | 9 - Downloadable virtual goods, namely, computer programs featuring food products for use in online virtual worlds; downloadable computer game software featuring virtual goods, namely, food products for use in online virtual worlds; digital media, namely, downloadable audio and video files featuring artwork, text, audio content and video content in the field of food; downloadable multimedia file containing artwork, text, audio recordings and video recordings relating to food authenticated by non-fungible tokens (nfts); downloadable virtual goods in the nature of image files of food products for use in online virtual worlds; Downloadable video recordings featuring avatars authenticated by non-fungible tokens; Downloadable image files of food products authenticated by non-fungible tokens (NFTs); crypto collectibles in the nature of downloadable image files of food authenticated by non-fungible tokens (NFTs); Downloadable multimedia file containing text relating to food authenticated by non-fungible tokens (NFTs); Digital collectibles in the nature of downloadable image files of food authenticated by non-fungible tokens (NFTs); Downloadable image files of avatars for use in |

| Mark | Reg. No./ App. No. | Reg. Date/ App. Date | First Use | Class/Goods and Services |
|---|---|---|---|---|
|  |  |  |  | virtual worlds; Downloadable virtual goods in the nature of image files of avatars for use in online virtual worlds; Downloadable image files of accessories for computer game avatars authenticated by non-fungible tokens (NFTs) |
|  |  |  |  | 41 - Entertainment services, namely, providing on-line, non-downloadable virtual food products for use in virtual environments created for entertainment purposes; Virtual reality game services provided on-line from a computer network; entertainment services, namely, providing virtual environments in which users can interact for recreational, leisure or entertainment purposes; Entertainment services, namely, providing online browser-based video games; Providing online virtual reality game services featuring crypto tokens for use in virtual worlds. |

17.     Collectively with Kellogg's longstanding common law rights therein, the above registrations are hereinafter referred to as the "EGGO Trademarks." True and correct copies of the above registrations are attached to this Complaint as Exhibit A.

**C. Kellogg's EGGO Packaging Trade Dress**

18.     In addition to its extensive trademark rights in the EGGO and L'EGGO MY EGGO marks, as detailed above, Kellogg also has rights in the highly distinctive packaging trade dress it

10

has long used in connection with its EGGO products. The highly distinctive packaging trade dress is herein referred to as the "EGGO Packaging Trade Dress."

19.     The EGGO Packaging Trade Dress is comprised of the overall look and feel of the packaging for the EGGO products and features, among other things, the following distinctive, non-functional elements: a red, white, and yellow color scheme, with the term "EGGO" prominently displayed in a distinctive cursive font:



20.     While EGGO waffles come in a variety of flavors and styles, the packaging for each type of product features the same red, white, and yellow color scheme with the same distinctive cursive font:

60415171.4



21.     Kellogg has been using this EGGO Packaging Trade Dress continuously in connection with the EGGO products for approximately six decades, since at least its purchase of EGGO in 1968.

22.     The EGGO Packaging Trade Dress is inherently distinctive.

23.     The configuration of the EGGO Packaging Trade Dress is arbitrary.

24.     The EGGO Packaging Trade Dress has acquired secondary meaning in the minds of consumers.

25.     The EGGO Packaging Trade Dress is non-functional.

26.     Exclusive use of the EGGO Packaging Trade Dress would not put third parties at any competitive disadvantage.

**D.  Defendant's Infringement**

27.     In April 2024, Kellogg became aware that Defendant has been operating a food truck called "L'Eggo my Eggroll" and that it had registered as a business using the same name.

28.     Defendant's name and mark "L'Eggo my Eggroll" is nearly identical to the EGGO Trademarks and is highly likely to confuse consumers into believing there is some association between Defendant and Kellogg, when there is none.

60415171.4

29.     Moreover, Defendant's use of the term "L'Eggo my Eggroll" is likely to dilute the market, and consumers are bound to associate the term "L'Eggo my Eggroll" with Kellogg and its famous EGGO Trademarks.

30.     Additionally, and as shown in the following image, Defendant's food truck infringes the EGGO Packaging Trade Dress by using a highly similar font stylization, along with a highly similar red, white, and yellow color scheme:





31.     Kellogg sent numerous letters to Defendant and has had multiple oral communications with Defendant requesting that it cease its infringing conduct.   In all of these

communications, and in view of Defendant's status as a small start-up business, Kellogg conveyed that it would allow Defendant a reasonable period of time to cease its conduct. Kellogg's letters are attached to this Complaint as Exhibit B.

32.     Instead of ceasing its infringing activities or otherwise meaningfully engaging with Kellogg's demands, Defendant ignored Kellogg's requests and responded with its own threats and demands for Kellogg to purchase its entire business in exchange for a substantial monetary sum. Defendant also communicated that Kellogg is responsible for medical bills related to the alleged reaction of one of Defendant's principals to Kellogg's letter.

33.     Defendant has been clear in all of its communications with Kellogg that Defendant will not stop its infringing conduct.

34.     Defendant's refusal to comply with Kellogg's demands has left Kellogg with no other choice but to file the instant action.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

35.     Kellogg repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

36.     Kellogg owns valid and enforceable rights in the EGGO Trademarks by virtue of Kellogg's extensive use, promotion, and advertisement of the EGGO Trademarks and has possessed such rights at all times material hereto.

37.     The EGGO Trademarks are registered with the United States Patent and Trademark Office and constitute *prima facie* evidence of the validity of the EGGO Trademarks and of Kellogg's ownership of the EGGO Trademarks.

14

38.     Kellogg's use of the EGGO Trademarks predates any alleged use of the same or similar mark by Defendant in the United States.

39.     Notwithstanding Kellogg's well-known and prior rights in its EGGO Trademarks, Defendant has, with actual and constructive notice of Kellogg's rights, and long after Kellogg established its rights in the EGGO Trademarks, adopted and used the term "L'Eggo my Eggroll" in conjunction with its food truck business in United States commerce.

40.     Defendant's use of the term "L'Eggo my Eggroll" without the authorization of Kellogg is likely to deceive and cause confusion, mistake, or deception among consumers or potential consumers as to the source of origin of Defendant's goods and services and the sponsorship or endorsement of those goods and services by Kellogg.

41.     Kellogg has not authorized, licensed, or otherwise condoned or consented to Defendant's use of the term "L'Eggo my Eggroll" in any manner whatsoever.

42.     Such confusion, deception, or mistake is likely to occur as a direct result of Defendant's use of the term "L'Eggo my Eggroll" in connection with the display, advertising, promotion, offer of sale and sale of their goods and services.

43.     Despite Defendant's actual knowledge of Kellogg's rights in and to the EGGO Trademarks, Defendant has used and, upon information and belief, will continue to use the term "L'Eggo my Eggroll" in disregard of Kellogg's rights.

44.     Upon information and belief, Defendant has committed these acts with full knowledge of Kellogg's rights and with intent to deceive the public and harm Kellogg.

45.     Defendant's activities have caused and will continue to cause irreparable injury to Kellogg if not restrained by this Court.

60415171.4

46.     As a direct and proximate result of Defendant's unlawful infringement, Kellogg has suffered damages and will continue to suffer damages in an amount that is not currently ascertainable but will be proven at trial.

**COUNT II**
**FEDERAL TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a))**

47.     Kellogg realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48.     Kellogg owns valid and enforceable rights in the EGGO Packaging Trade Dress in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the EGGO Packaging Trade Dress, and has possessed such rights at all times material hereto.

49.     Kellogg's EGGO Packaging Trade Dress is highly inherently distinctive.

50.     Kellogg's EGGO Packaging Trade Dress has acquired secondary meaning.

51.     Kellogg's EGGO Packaging Trade Dress is non-functional.

52.     Kellogg's use of its EGGO Packaging Trade Dress in connection with food items predates any of Defendant's use thereof.

53.     Defendant knowingly and intentionally adopted the EGGO Packaging Trade Dress with full knowledge of Kellogg's extensive prior use of the EGGO Packaging Trade Dress.

54.     Kellogg has not authorized, licensed, or otherwise condoned or consented to Defendant's use of the EGGO Packaging Trade Dress in any manner whatsoever.

55.     Defendant's marketing, promotion, advertising, offering for sale, and selling of food products and related services in connection with the EGGO Packaging Trade Dress are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as

16

to the origin, source, sponsorship, or affiliation of Defendant and Kellogg and their respective goods and services.

56.     Such confusion, deception, or mistake is likely to occur as a direct result of Defendant's displaying, advertising, promoting, offering of sale, and selling of food products and related services in connection with the EGGO Packaging Trade Dress.

57.     Defendant's actions constitute trade dress infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Though Defendant had prior knowledge of Kellogg and its EGGO Packaging Trade Dress and received notice from Kellogg that is infringing Kellogg's EGGO Packaging Trade Dress, Defendant continues to intentionally infringe the EGGO Packaging Trade Dress.

59.     Defendant's actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C § 1117(a).

60.     Defendant's conduct has occurred in interstate commerce and substantially impacts interstate commerce.

61.     As a direct and proximate result of Defendant's conduct, Kellogg has suffered damage to the valuable EGGO Packaging Trade Dress, as well as harm to its valuable goodwill and reputation.

62.     Defendant's conduct described herein will continue to cause irreparable damage to Kellogg and confuse the public unless enjoined by this Court.

63.     An award of money damages alone cannot fully compensate Kellogg for its injuries, and Kellogg has no adequate remedy at law.

60415171.4

<u>**COUNT III**</u>
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

64.    Kellogg repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

65.    Kellogg owns valid and enforceable rights in the EGGO Trademarks and the EGGO Packaging Trade Dress by virtue of Kellogg's extensive use, promotion, and advertisement, and has possessed such rights at all times material hereto.

66.    Kellogg's use of the EGGO Trademarks and the EGGO Packaging Trade Dress predates any alleged use of the same or similar marks by Defendant in the United States.

67.    Notwithstanding Kellogg's well-known rights in its EGGO Trademarks and the EGGO Packaging Trade Dress, Defendant has, with actual and constructive notice of Kellogg's rights, and long after Kellogg established its rights used a term confusingly similar to the EGGO Trademarks and the EGGO Packaging Trade Dress in conjunction with the sale and offer of sale of goods and services in United States commerce.

68.    Defendant's use of the term "L'Eggo my Eggroll" and the EGGO Packaging Trade Dress without the authorization of Kellogg is likely to deceive and cause confusion, mistake, or deception among consumers or potential consumers as to the sources of origin of Defendant's goods and services and the sponsorship or endorsement of those goods and services by Kellogg.

69.    Kellogg has not authorized, licensed, or otherwise condoned or consented to Defendant's use of the term "L'Eggo my Eggroll" or the EGGO Packaging Trade Dress in any manner whatsoever.

70.    Such confusion, deception, and mistake is likely to occur as a direct result of Defendant's use of the term "L'Eggo my Eggroll" and the EGGO Packaging Trade Dress in

18

connection with the display, advertising, promotion, offer of sale and sale of their goods and services.

71.     Despite the fact that Defendant has actual knowledge of Kellogg's rights in the EGGO Trademarks and the EGGO Packaging Trade Dress, Defendant has used, and upon information and belief, will continue to use, the term "L'Eggo my Eggroll" and the EGGO Packaging Trade Dress in disregard of Kellogg's rights.

72.     Unless restrained and enjoined by this Court, Defendant's conduct will permit Defendant to benefit unfairly from Kellogg's longstanding rights in its EGGO Trademarks and the EGGO Packaging Trade Dress and the enormous good will associated therewith.

73.     Upon information and belief, Defendant committed the acts with full knowledge of Kellogg's rights and with intent to deceive the public and harm Kellogg.

74.     Defendant's activities have caused and will continue to cause irreparable injury to Kellogg if not restrained by this Court.

75.     As a direct and proximate result of Defendant's unlawful infringement, Kellogg has suffered damages and will continue to suffer damages in an amount that is not currently ascertainable but will be proven at trial.

## COUNT IV
## FEDERAL TRADEMARK DILUTION BY BLURRING
## (15 U.S.C. § 1125(c)(1))

76.     Kellogg realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

77.     The famous EGGO Trademarks are highly recognized by consumers.  For over 50 years, Kellogg has extensively and exclusively used its EGGO Trademarks throughout the United

States.  Through its extensive use, Kellogg has made substantial sales in connection with its EGGO Trademarks.

78.     Through Kellogg's continuous and extensive use of the EGGO Trademarks, the EGGO Trademarks have become famous and highly distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

79.     The EGGO Trademarks were famous and highly recognized among the general public prior to Defendant's use of the term "L'Eggo my Eggroll."

80.     Defendant's use of the term "L'Eggo my Eggroll" is nearly identical to the EGGO Trademarks.

81.     By its acts alleged herein, Defendant has caused and is likely to cause dilution of the famous EGGO Trademarks by impairing the distinctiveness of the famous EGGO Trademarks.

82.     Defendant used and continues to use in commerce the confusingly similar term "L'Eggo my Eggroll" willfully and with the intent to dilute the EGGO Trademarks, and with the intent to trade on the reputation and goodwill of Kellogg.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

83.     Defendant's actions are intentional and in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have already caused Kellogg irreparable damage and will, unless enjoined, continue to so damage Kellogg.

84.     Kellogg has no adequate remedy at law and is entitled to injunctive relief under 15 U.S.C. § 1125(c)(1).

85.     Kellogg is further entitled to recover damages in the nature of Defendant's profits and damages that Kellogg has sustained and will continue to sustain as a result thereof, including attorneys' fees and costs, as well as trebling of damages pursuant to 15 U.S.C. §§ 1117(a) and

1125(c)(5). Kellogg is also entitled to an order requiring the destruction of dilutive or infringing articles pursuant to 15 U.S.C. § 1118.

### COUNT V
### FEDERAL TRADEMARK DILUTION BY TARNISHMENT
### (15 U.S.C. § 1125(c))

86.     Kellogg realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

87.     Through Kellogg's continuous and extensive use of the EGGO Trademarks, the EGGO Trademarks have become famous and highly distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and uniquely associated with Kellogg.

88.     The EGGO Trademarks were famous and highly recognized prior to Defendant's use of the term "L'Eggo my Eggroll" or any confusingly similar mark to the EGGO Trademarks by Defendant.

89.     By its acts alleged herein, and despite knowledge of the EGGO Trademarks, Defendant is likely to cause dilution of the famous EGGO Trademarks by harming the reputation of the EGGO Trademarks.

90.     Defendant used and continues to use in commerce the term "L'Eggo my Eggroll" and other marks that are confusingly similar to the EGGO Trademarks marks in connection with its goods and services.

91.     By its acts alleged herein, which occurred after the EGGO Trademarks acquired fame, Defendant is likely to tarnish, has tarnished, and will, unless enjoined, continue to tarnish, the valuable EGGO Trademarks by undermining and damaging the valuable goodwill and reputation associated with the EGGO Trademarks.

92.     Defendant uses and continues to use in commerce the term "L'Eggo my Eggroll" and marks confusingly similar to the EGGO Trademarks willfully and with the intent to dilute the EGGO Trademarks, and with the intent to trade on the reputation and goodwill of Kellogg and the EGGO Trademarks.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

93.     Defendant's actions are intentional and in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have already caused Kellogg irreparable damage and will, unless enjoined, continue to so damage Kellogg.

94.     Kellogg has no adequate remedy at law and is entitled to injunctive relief under 15 U.S.C. § 1125(c)(1).

95.     Kellogg is further entitled to recover damages in the nature of Defendant's profits and damages that Kellogg has sustained and will sustain as a result thereof, including attorneys' fees and costs, as well as trebling of damages pursuant to 15 U.S.C. §§ 1117(a) and 1125(c)(5). Kellogg is also entitled to an order requiring the destruction of dilutive or infringing articles pursuant to 15 U.S.C. § 1118.

## PRAYER FOR RELIEF

WHEREFORE, Kellogg respectfully requests and prays that the Court:

1.     Enter judgment in Kellogg's favor and against Defendant on all counts of the Complaint;

2.     Determine that Defendant willfully violated the Lanham Act, that Kellogg has been damaged by such violations, and that Defendant is liable to Kellogg for such violations;

3.     Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

4.     Issue a preliminary and permanent injunction enjoining Defendant and any of its officers, employees, agents, successors and assigns, and all those in active concert

22

and participation with Defendant, and each of them who receives notice directly or otherwise of such injunctions:

1. from using in any manner the EGGO Trademarks or the term "L'Eggo my Eggroll" and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the EGGO Trademarks so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like or dilution by blurring or tarnishment,;

2. from using in any manner the EGGO Packaging Trade Dress and any variations thereof, or any other product packaging which so resembles or is similar to the EGGO Packaging Trade Dress as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

3. from further unlawfully trading upon and misappropriating the goodwill and reputation of Kellogg; and

4. from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts.

5. Order Defendant to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in its possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the term "L'Eggo my Eggroll" or the EGGO Packaging Trade Dress, or any variations thereof, or which constitute and/or bear any other device, presentation or statement in violation of the injunction herein requested by Kellogg, and that Defendant be ordered to deliver up for destruction all means of making the same;

6. Order Defendant to immediately remove from its vehicles the term "L'Eggo my Eggroll "and the EGGO Packaging Trade Dress, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Kellogg, and that Defendant be ordered to provide proof of same;

7. Order Defendant to file with the Court and serve on Kellogg, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

8. In accordance with 15 U.S.C. § 1118, order Defendant to deliver to Kellogg, at Defendant's expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks or trade dress of Kellogg or which

23

otherwise violate 15 U.S.C. §§ 1114 and 1125(a), in the possession, custody, or control of Defendant, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

9.      Order that Defendant account for and pay over to Kellogg all gains, profits, and advantages derived from its violation of 15 U.S.C. §§ 1114 and 1125(a) and the common law, and also pay to Kellogg the damages which Kellogg has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

10.     Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Defendant be required to pay over to Kellogg enhanced damages;

11.     Order that Defendant be required to pay Kellogg's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

12.     Award interest, including pre-judgment interest on the foregoing sums;

13.     Award Kellogg an amount of money to undertake corrective advertising;

14.     Award Kellogg enhanced damages based on Defendant's willful and intentional conduct; and

15.     Grant Kellogg any other relief as the Court deems necessary and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Kellogg demands a trial by jury on all issues present in this civil action.

Respectfully submitted,

HONIGMAN LLP

*/s/ Mary A. Hyde*
Mary A. Hyde
321 N. Clark Street, Suite 500
Chicago, IL 60654-4769
Phone: (312) 701-9300
Email: mhyde@honigman.com

60415171.4

Deborah J. Swedlow (*Pro Hac Vice to be submitted*)
Yafeez S. Fatabhoy (*Pro Hac Vice to be submitted*)
315 E. Eisenhower Pkwy, Suite 100
Ann Arbor, MI 48108
Phone: (734) 418-4200
E-mail: bswedlow@honigman.com
yfatabhoy@honigman.com

*Attorneys for Plaintiff*

60415171.4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of June 2025, a copy of the foregoing was filed with the Court.

/s/ Mary A. Hyde
*Attorney for Plaintiff*

60415171.4